1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ERIC ALSTON,

11            Petitioner,              No. CIV S-02-1817 GEB KJM P

12        vs.

13   TOM L. CAREY,                     ORDER AND

14            Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16            Petitioner is a California prisoner proceeding pro se with an application for writ of

17   habeas corpus under 28 U.S.C. § 2254.  Petitioner is currently serving a sentence of eighteen

18   years imprisonment in the California Department of Corrections following his 1998 Sacramento

19   County conviction for possession of cocaine base for sale.

20   I.  Motion For Leave To Amend

21            On May 19, 2005, petitioner filed a motion seeking leave to file an amended

22   application for writ of habeas corpus.  Petitioner fails to provide any factual basis for leave to

23   amend.  Under Federal Rule of Civil Procedure 15(a) the court may grant leave to amend when

24   justice requires.  Here, petitioner fails to explain why the claim presented in his amended

25   application was not included in his original application.  Moreover, petitioner fails to include all

26   of his claims in his amended application; petitioner simply asserts a new claim.  This approach

1

1   violates Local Rule 15-220, which requires that an amended pleading be complete in itself

2   without reference to any prior pleading.  For these reasons, petitioner's request for leave to

3   amend will be denied[1] and the court will proceed to the merits of petitioner's original habeas

4   application.

5   II.   Availability Of Habeas Corpus Relief

6            An application for a writ of habeas corpus by a person in custody under a

7   judgment of a state court can be granted only for violations of the Constitution or laws of the

8   United States.  28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any

9   claim decided on the merits in state court proceedings unless the state court's adjudication of the

10  claim:

11            (1) resulted in a decision that was contrary to, or involved an
              unreasonable application of, clearly established federal law, as
12            determined by the Supreme Court of the United States; or

13            (2) resulted in a decision that was based on an unreasonable
              determination of the facts in light of the evidence presented in the
14            State court proceeding.

15   28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA").  See Ramirez v. Castro,

16  365 F.3d 755, 773-775 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas

17  relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his

18  Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v.

19  Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and

20  therefore did not address the merits of petitioner's Eighth Amendment claim).[2]  Courts are not

21

22            [1]  In any case, the claim presented in the amended petition has no merit.  Petitioner claims
     his current sentence was enhanced with the use of prior convictions obtained following guilty
23   pleas.  Petitioner claims this violates due process and the prior plea agreements.  However,
     petitioner fails to present anything suggesting petitioner's sentence is fundamentally unfair,
24   thereby constituting a violation of due process, see Jamal v. Van de Kamp, 926 F.2d 918, 919
     (9th Cir. 1991), or that a specific provision of any prior plea agreement is somehow breached by
25   petitioner's current sentence.

26            [2]  In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals
     held in a § 2254 action that "any independent opinions we offer on the merits of constitutional

required to address the merits of a particular claim, but may simply deny a habeas application on

the ground that relief is precluded by 28 U.S.C. § 2254(d). Lockyer, 538 U.S. at 71 (overruling

Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir 2003) in which the Ninth Circuit required

district courts to review state court decisions for error before determining whether relief is

precluded by § 2254(d)). It is the habeas petitioner's burden to show that he is not precluded

from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

       The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the

law set forth in Supreme Court cases, or unreasonably apply such law if the state court simply

fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8

(2003).

       The court will look to the last reasoned state court decision in determining

whether the law applied to a particular claim by the state courts was contrary to the law set forth

in the cases of the United States Supreme Court or whether an unreasonable application of such

---

claims will have no determinative effect in the case before us . . . At best, it is constitutional
dicta." However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain
relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title
28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation
of the Constitution before he or she may obtain habeas relief. See Lockyer, 538 U.S. at 70-71;
Ramirez, 365 F.3d at 773-75.

1  law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

2  919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial

3  of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court

4  must perform an "independent review of the record to ascertain whether the state court decision

5  was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

6  words, the court assumes the state court applied the correct law, and analyzes whether the

7  decision of the state court was based on an objectively unreasonable application of that law.

8         It is appropriate to look to lower federal court decisions to determine what law has

9  been "clearly established" by the Supreme Court and the reasonableness of a particular

10  application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

11  III.  Background

12         Petitioner was found guilty following a jury trial.  After sentencing, petitioner

13  appealed his conviction and sentence to the California Court of Appeal.  The Court of Appeal

14  summarized the facts surrounding petitioner's conviction as follows:

15             This is a paradigmatic possession case.  The facts are not
               themselves complex or disputed, merely the inferences to be drawn
16             from them.

17             Two police officers on patrol in the Strawberry Manor
               neighborhood saw the defendant leaning into a car stopped in the
18             middle of the street.  On seeing the police car, the defendant turned
               and walked into his garage, watching as the police detained and
19             eventually arrested the driver of the car.  When the defendant came
               out of the garage, one of the officers searched him (pursuant to a
20             condition of his parole).  The officer found over $400 in the
               defendant's pocket.  He then searched the residence and rummaged
21             through the garbage, not finding any particularly incriminating
               evidence.
22
               There was a Cadillac and a Blazer in the driveway, and a
23             convertible (which the defendant appeared to have been sanding)
               parked on the street, all of which the defendant acknowledged as
24             belonging to him.  There was a Taurus parked in the garage, which
               he said belonged to his mother.  The other officer removed a set of
25             keys from the ignition of the convertible.  They fit all the cars
               except the Taurus.  The office [sic] did not find any evidence in the
26             convertible or Blazer.  In the Cadillac, however, he found a pager

4

on one of the visors; when he opened the trunk, there was a large beverage cup covered with grease in which was a large rock of cocaine that weighed nearly an ounce and was worth roughly $2400.[fn] The officers testified they had not seen the defendant at or near the Cadillac's trunk at any point.

A police expert testified as an expert. It was his opinion the quantity of rock cocaine retrieved far exceeded the usual amount purchased for purposes of personal use, and pagers were often used to facilitate rock cocaine sales.

According to defense witnesses, the defendant's mother (who lived with him) is the registered owner of the Cadillac. The particular key chain that the police seized belonged to the defendant's wife. The Cadillac was inoperable at the time of the search, but in the past the defendant and other family members had driven the car, and there were at least three sets of keys to the Cadillac either circulating among other family members or kept on a hook in the kitchen. A number of family members stayed at or visited the house.

----------------------

[fn] The officer had testified the defendant's hands were grease-covered, although this information was not in his report.

Answer, Ex. D at 2-3. The Court of Appeal affirmed petitioner's conviction and sentence. Id. at 13. Petitioner then sought review of the Court of Appeal's decision in the California Supreme Court. Answer, Ex. E. Petitioner's request for review was denied. Answer, Ex. F. Next, petitioner sought collateral relief in the Superior Court for Sacramento County and then in the California Supreme Court. Answer, Exs. G & I. Both requests were denied. Answer, Exs. H & J.

IV. Arguments And Analysis

   A. Ineffective Assistance Of Counsel

      1. Declaration of Tasheena Wynne (Ground I)

         After trial, petitioner asked the court for a new trial based on an affidavit from his niece, Tasheena Wynne. CT 83-92. The affidavit reads as follows:

/////

/////

5

1.  I am the 16-year-old niece of Eric Anthony Alston.

2.  Sometime before my Uncle Eric Alston was arrested, I had purchased one ounce of crack cocaine to sell.

3.  I hid the cocaine in a cup inside the trunk of my grandmother's blue Cadillac.

4.  At the time of my uncle's arrest, I was afraid to tell the officers that the cocaine belonged to me.

5.  Family members were telling me that Uncle Eric was going to get out of jail.

6.  Since I believed that Uncle Eric was going to get out of jail, I did not come forward and admit that the drugs were mine.

7.  I am coming forward now because I can not let anyone in my family go to prison for something I did.

CT 89-90.

The trial court denied petitioner's motion for new trial.  In support of that decision, the court stated, in part, as follows:

There is nothing in that declaration to show when she purchased the rock cocaine.  There is nothing in the declaration to show from whom it was purchased.  There is nothing in the declaration to show from where she acquired the considerable amount of money necessary to acquire that quantity of cocaine.

There is nothing in the declaration to show why of all the places she might decide to hide it, she decided to hide it in the very car that defendant had previously acknowledged was his upon which he was working.

There is nothing in that declaration to show where she put it in the trunk.  There's nothing to show that she put it in a cup.[3]  There is nothing in her declaration to show how much, and how it was packaged. [S]o the weaknesses in her declaration are reaching.

RT 230:8-22.

After the court informed petitioner's counsel that it would deny petitioner's

---

[3] Even if paragraph 3 of Wynne's declaration is read as answering the trial court's question as to whether she put the cocaine in a cup, the trial court's numerous other concerns about the declaration supported its conclusion as to the declaration's weaknesses.

6

motion for a new trial, counsel sought leave to file another declaration in which Ms. Wynne

would address the questions raised by the court.  RT 231:24-232:2.   The court denied

petitioner's request:

> I don't believe [leave to amend] would be appropriate or necessary
> to the decision because as Mr. Wise points out, all of the
> circumstantial evidence in this case and beyond what is in her
> declaration or what might be in her declaration, and we don't know
> the answer to those questions might be, is inconsistent with the
> circumstantial evidence in this case that:
>
> The defendant had admitted that he had used this car.  That it was
> his car.  That he was working on this car.  Was in close proximity
> to this car.  That the dope was stashed in a cup with a greasy
> fingerprint.  That he had dirt or grease on his own hands.  The
> amount of dope in that cup.  The quantity of the cash that he had on
> him.  And the packaging material in his bedroom all point to the
> defendant rather than to his niece as the owner of this - - owner of
> this dope.

RT 232:3-18.

Petitioner now claims that counsel was ineffective for failing to provide, with his

motion for new trial, a declaration from Ms. Wynne addressing the questions raised by the trial

court.  Mem. P. & A. in Supp. Pet. (Pet.) at 7-9.  Petitioner presented this claim to the California

Supreme Court in his request for collateral relief.  Answer, Ex. I at 4, 8-9.[4]  With his request,

petitioner presented a second affidavit from Tasheena Wynne which reads as follows:

> I, TASHEENA WYNNE, declare as follows under penalty of
> perjury:
>
> I am the niece of Petitioner ERIC ANTHONY ALSTON.  In July
> of 1998 I had just moved into my grandmother's house, where
> Uncle Eric lived, at 135 Danville Way in Del Paso Heights.  I lived
> in Oakland until two weeks before Eric was arrested.
>
> Just prior to Eric's arrest, I had possession of an ounce of crack
> cocaine.  I was keeping it to sell.  I hid the crack cocaine in a cup in
> the trunk of my grandmother's blue Cadillac.  The car was broken
> down at the time, and it was parked in the driveway of my

---

[4] This claim also was presented to the Superior Court of Sacramento County.  Answer,
Ex. G at 3, 7-9.  The Superior Court dismissed petitioner's claim due to the fact that petitioner's
appeal before the California Court of Appeal was still pending.  Answer, Ex. H.

grandmother's house.  When my uncle was arrested for possession of the rock cocaine, I did not tell anyone that it was mine.  I was afraid of being arrested, and I was told by my family that Uncle Eric would not be convicted of this crime.

I stated the above facts in an affidavit which was prepared by Eric's attorney, and which I signed in December of 1998, after Eric was convicted.

I later learned that the judge had some questions about my affidavit.  If I had been called to testify to answer these questions, I would have answered as follows.

When did you purchase the crack cocaine?  I bought it the night before it was found by the police.

Who did you buy it from?  I don't remember the name of the person I bought it from.

Where did you get the money to buy it?  I had money from selling drugs in Oakland and in Sacramento.  Even though I was only 16, I had been doing this for a while.

Why did you hide the crack cocaine in a car that your uncle was working on?  I thought this was a good place to hide it.  It was easy to get to, and no one else would look there because the Cadillac wasn't working.  Eric was charging the battery to listen to the radio.  He wasn't trying to fix the car.

Why didn't you say how much the crack cocaine weighed and how it was packaged?  I knew how much the cocaine weighed: one ounce.  You can tell by looking at it.  It always comes in lumps so I didn't think it was important to mention how it was packaged.

Are you coming forward now only because you are a juvenile and probably would not have to spend much time in jail?  No.  I was a juvenile at the time I did all my drug deals.  I know that I could get into trouble for this.  I could have come forward at the time of trial, but I thought that Eric would be acquitted.  I feel a little safer now that I no longer live in California.

If called to testify, I would testify to all the above matters and to anything else that the judge wishes to ask about my situation.  I have been in trouble before, and this was not the first time that I did something that I knew was illegal.

Answer, Ex. I, Attach. A.  Petitioner's request for collateral relief was denied without comment.

Answer, Ex. J.

The Supreme Court has enunciated the standards for judging ineffective assistance

8

of counsel claims.  See Strickland v. Washington, 466 U.S. 668 (1984).  First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at 688.  To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The court then must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  Id.  Second, a defendant must affirmatively prove prejudice.  Id. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-18 (9th Cir. 1984) (per curiam).

As noted above, the trial court specifically indicated that even if petitioner's counsel submitted an affidavit like the one submitted to the California Supreme Court with his motion for new trial, a new trial still would not have been granted.  Therefore, petitioner cannot establish that he was prejudiced by counsel's failure to file an affidavit addressing the questions raised by the trial judge.  See Bruns v. Thalacker, 973 F.2d 625, 630 (8th Cir. 1992) (failing to file a timely motion to dismiss was found not to constitute ineffective assistance of counsel considering the trial court previously rejected the argument presented in the motion).  The state court's denial of relief on this claim is not contrary to, nor based upon an unreasonable application of clearly established federal law.

2. Motion to Suppress (Ground II)

Petitioner asserts counsel was ineffective for failing to file a motion to suppress the evidence seized in his mother's house, garage and car under 15 Cal. Code Regs. § 3701.1.  Pet. at 11:7-22.  That regulation reads as follows:

/////

(a) Any contraband or evidence of illegal activity shall be seized by the parole agent or the law enforcement officer conducting a search of a parolee's person, property, or residence.  Property not belonging to the parolee shall be seized only when needed as evidence to support a parole violation charge.

(b) Property seized as evidence shall be documented on a CDC Form 1136, Evidence Report and Inventory Receipt, (Rev. 6/88). A copy of the form will be available to either the parolee or a responsible adult, or left at the place of seizure.

(c) Only those areas of a parolee's residence occupied solely by the parolee or of common access shall be searched without a search warrant.

(d) A parole agent's authority to search or arrest a parolee may be delegated to another law enforcement agency under any of the following circumstances:

(1) There is reason to believe a parole violation has occurred.

(2) The parole agent, due to distance from the scene, is unable to be present.

(3) Contraband will likely be destroyed if the search is delayed.

(e) If staff's forced entry into a structure results in damage to the structure, the parole office shall make available to the landlord or owner the claim form needed to recover repair costs through the State Board of Control.

15 Cal. Code Regs. § 3701.1.

Petitioner claims three grounds for suppression under § 3701.1:

First, under the section, subd. (a), property not belonging to the parolee may not be seized unless necessary to support a parole violation charge.  This puts a responsibility on the searching authority to determine whom the property truly belongs to.  The police in this case did not carry out this function.

Second, in order to carry out the search the police must be aware that the area searched is "occupied solely by the parolee or of common access." (Subd. (c).)  The police also failed to carry out this function, extending the search to areas which were primarily controlled by other residents of the house.

/////

/////

10

> Third, there was no exigency demonstrated under subd. (d):  the parole officer was not distant from the scene, there was no reason to believe that petitioner was in violation of his parole, and there was no knowledge of any contraband or reason to believe that it would be destroyed pending any delay.

Pet. at 11.  Petitioner raised this claim in both of his state collateral actions.  Answer, Exhibits G & I.  It was rejected by the Superior Court for failure to state a prima facie claim, Answer, Ex. H, and by the Supreme Court without comment.  Answer, Ex. J.

Regarding petitioner's first point, petitioner presents nothing indicating that section (a) provided a basis under California law to suppress evidence at petitioner's trial.  It appears that section (a) simply creates a state law property interest in the property of persons that are not being subjected to a parole search.[5]

With respect to petitioner's second point, here as well petitioner fails to point to anything suggesting section (c) provided a basis for suppression of evidence at petitioner's trial.  Section (c) simply appears to create rights on behalf of those who are not specifically subjected to a parole search.[6]   In any case, the pager and cocaine were found in the Cadillac upon which petitioner appeared to be working when police officers arrived at his house.  RT 73:2-75:2, 75:25-76:2, 77:13-20.   Also, one of the officers was told the Cadillac belonged to petitioner.[7]  RT 87:7-11.  During his defense, petitioner's wife and mother both testified that everyone in the Alston family used the Cadillac.  RT 127:5-21, 141:25-28.  Four hundred and three dollars were found in petitioner's pocket.  RT 57:24-58:4.  A box of unused sandwich bags was found in petitioner's bedroom.  RT 49:3-11.  Plastic bags with white residue inside were found in a

---

[5]  Under federal law, a person does not have standing under the Fourth Amendment to seek suppression of property belonging to a third person, or, generally speaking, of property obtained from a third person's premises.  Rakas v. Illinois, 439 U.S. 128, 134 (1978).

[6]  See note 5 above.

[7]  The trial record does not specifically indicate, nor does petitioner now present, any specific evidence suggesting petitioner was not working on the Cadillac, or that police officers were not informed that the Cadillac belonged to petitioner.

1  garbage can in the garage.  RT 49:26-50:2.  None of these items were recovered from a place to

2  which petitioner did not have authorized access; rather they qualify as places of "common

3  access."

4         Finally, petitioner's third point is that police officers did not have the power to

5  conduct a parole search because, among other reasons, petitioner's parole officer was not "distant

6  from the scene."  However, the record does not show the whereabouts of petitioner's parole

7  officer at the time police officers confronted petitioner.  Moreover, the officer's search appears

8  allowable based on the parole violation or preservation of contraband provisions of the

9  regulation.  Therefore, the record does not establish that the police officers who searched

10  petitioner failed to follow California law in doing so.

11         In light of the foregoing, petitioner has not shown that by failing to file a motion

12  to suppress, under 15 Cal. Code Regs. § 3701.1,  his trial counsel's representation of petitioner

13  fell below an objective standard of reasonableness.  Further, petitioner has not shown a

14  reasonable probability that a motion to suppress under 15 Cal. Code Regs. § 3701.1  would have

15  been successful.  The state court's resolution of this claim also is not contrary to federal law.

16      B.  <u>Sufficiency Of The Evidence (Ground III)</u>

17         Petitioner claims jurors were not presented with sufficient evidence to convict

18  petitioner with possession of cocaine.  This claim and all remaining claims were asserted by

19  petitioner on direct appeal.  Answer, Exs. A at 9-12 & E at 3-7.  The Court of Appeal issued a

20  reasoned opinion with respect this claim.  Answer, Ex. D.  The California Supreme Court did not

21  specifically address any of petitioner's claims.  Answer, Ex. F.

22         A petitioner for a federal writ of habeas corpus faces a heavy burden when

23  challenging the sufficiency of the evidence used to convict.  In <u>Jackson v. Virginia</u>, 443 U.S. 307,

24  319 (1979), the Supreme Court held "the relevant question is whether, after viewing the evidence

25  in the light most favorable to the prosecution, *any* rational trier of fact could have found the

26  essential elements of the crime beyond a reasonable doubt."  (Emphasis in original.)

1    Under California law, to establish unlawful possession of narcotics, "it must be

2 shown that the accused exercised dominion and control over the drug with the knowledge of its

3 presence and narcotic character." People v. Redrick, 55 Cal.2d 282, 285 (1961).

4    Petitioner claims the prosecution did not present evidence indicating that

5 petitioner had exclusive control over the drugs found in the trunk of the Cadillac. The California

6 Court of Appeal, when it addressed petitioner's sufficiency of the evidence claim, observed:

7    "Conviction is not precluded . . . if the defendant's right to exercise
dominion and control over the place where the contraband was
8    located is shared with another . . .exclusive possession or control is
not necessary." (People v. Rice (1976) 59 Cal.App.3d 998, 1002-
9    1003.)

10 Answer, Ex. D at 4.

11    The court must defer to the Court of Appeal's determination of the necessity of

12 "exclusive control," as the interpretation of state criminal law generally is left to the states. See,

13 e.g., Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). As noted above, there was

14 undisputed evidence presented to the jury indicating petitioner shared control over the trunk of

15 the Cadillac with other members of his family. RT 127:5-21, 141:25-28.

16    Petitioner implicitly suggests that jurors were not presented with sufficient

17 evidence indicating petitioner knew cocaine was in the trunk of the Cadillac. The Court of

18 Appeal addressed this argument as follows:

19    It is necessary for the prosecution to demonstrate affirmatively
"some incriminating statement or circumstance in addition to the
20    presence [of contraband] . . . which indicate[s] knowledge of the
defendant of its presence . . . ." (People v. Antista (1954) 129
21    Cal.App.2d 47, 50.) Inferences reasonably drawn from
circumstantial evidence are sufficient proof. (People v. Williams
22    (1971) 5 Cal.3d 211, 215.)

23    As we noted above, one of the police officers testified the
defendants [sic] hands were greasy. The cup in which the rock
24    cocaine lay was covered with "a bunch of black grease spots."
While the defendant disparages this evidence as weak and
25    equivocal, and the officer's testimony as convenient, those are
arguments for the finder of fact going to the weight of the
26    evidence. These facts, joined with the others relevant to this

13

> incident, are sufficient evidence from which to draw the inference the defendant handled the cup and thus knew of the presence of the rock cocaine.  We therefore reject this argument.

Answer, Ex. D at 4-5.

After reviewing the relevant portions of the record, the court finds that the California Court of Appeal's rejection of petitioner's sufficiency of the evidence claim was not contrary to, nor based on an unreasonable application of clearly established federal law.  Furthermore, the decision was not based on an unreasonable interpretation of the facts.  The presence of grease on petitioner's hands as well as on the cup containing cocaine found in the trunk of the Cadillac is sufficient to provide a rational juror with a basis to find that petitioner knew there was cocaine in the trunk beyond a reasonable doubt.[8]  For these reasons, petitioner's sufficiency of the evidence claim must be rejected.

C.  Jury Instruction Regarding "Control" (Ground IV)

During deliberations, jurors asked the judge for the "[d]efinition of 'control' as it pertains to the charges?"  CT 75.   The court responded, without objection from petitioner, "[t]he word 'Control' in the instruction defining the elements of the crime charged is not a legal word and should be understood in its ordinary meaning of exercising or having the power to exercise influence over an object."  CT 76.[9]  Petitioner claims this definition was inadequate and that the jury should have been instructed that to find petitioner had control over the cocaine, the jury had to find that petitioner had intentional direction over it, or that he had a right to exclude third persons from possessing the cocaine.  Pet. at 18:5-14.

---

[8]  In his traverse, petitioner specifically questions the believability of Officer Hogge's observation that petitioner had grease on his hands, RT 74:3-8, given the fact that Hogge did not include any mention of petitioner having greasy hands in his police report or at petitioner's preliminary hearing.  Traverse at 3-4.  However, a jury's credibility determinations generally are entitled to deference.  See Schlup v. Delo, 513 U.S. 298, 330 (1995); Bruce v. Terhune, 376 F.3d 950 (9th Cir. 2004).  Hogge's statement is not so unbelievable that jurors could not rely on the statement as a matter of law.

[9]  The opinion of the California Court of Appeal concerning petitioner's direct appeal indicates that the above colloquy was not transcribed.  Answer, Ex. D at 6.

14

1    The California Court of Appeal found that the trial court did not abuse its

2  discretion in failing to define "control" in any greater detail than its ordinary meaning.  Answer,

3  Ex. D at 7.  Petitioner cites no authority to support his position that the trial court was required to

4  respond to the jury's question by defining the word "control" as requiring "intentional

5  direction."[10]  The court cannot recommend a grant of habeas relief as to this claim.[11]  Woodford,

6  537 U.S. at 25.

7         D.  Purchase Of Cocaine For Sale (Ground V)

8    Petitioner was charged with both possessing cocaine for sale and purchasing

9  cocaine for sale under California Health and Safety Code § 11351.5, which criminalizes

10  possession or purchase for sale.  CT 31; cf. CT 57 (instruction describing charge).  The verdict

11  form signed by the foreperson of petitioner's jury reads:

12       We, the jury, in the above entitled cause, find the defendant, ERIC
         ANTHONY ALSTON, Guilty, of the crime of violation of Section
13       11351.5 of the Health and Safety Code of the State of California
         (possess / purchase cocaine base for sale) as charged in the
14       information.

15  CT 77.  Petitioner claims there was no evidence petitioner purchased cocaine for sale, therefore,

16  he should not have been charged with purchase to the jury.  Pet. at 18-20.

17    Petitioner raised this claim on direct appeal.  The California Court of Appeal

18

19    [10]  Petitioner does cite to People v. Barnes, 57 Cal. App. 4th 552, 556 (1997), but in that
    case the court reversed out of a concern that the "constructive possession" instruction given to
20  the jury allowed jurors to convict solely on grounds of constructive possession when the facts of
    the case, unlike here, did not support such a conviction.

21

22    [11]  Respondent claims that petitioner "procedurally defaulted" this claim by not raising it
    at trial.  The Supreme Court has found a district court may reach the merits of a habeas
23  petitioner's claim where, as here, the merits are "easily resolvable against the petitioner whereas
    the procedural-bar issue involve[s] complicated issues of state law."  Lambrix v. Singletary, 520
    U.S. 518, 525 (1997); see also Kuhali v. Reno, 266 F.3d 93, 101 (2d Cir. 2001) ("It is well
24  settled that the doctrine of procedural default is prudential rather than jurisdictional in nature.
    E.g. Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2nd Cir. 2000)
25  ('The doctrine of procedural default is based on considerations of comity and finality, and not on
    a jurisdictional limitation of the power of a federal court . . . to look beyond a state procedural
26  default and consider the merits of a defaulted claim . . .')").

found that any error attributable to advising the jury that petitioner was charged with purchase as well as possession of cocaine for sale was harmless.  Answer, Ex. D at 5.  The Court of Appeal noted that petitioner had pointed to no substantive argument as to possession advanced by the prosecution, and also had not identified any instruction actually directing the jury to resolve the charge of purchase.  Id.  In fact, the jury instruction on § 11351.5 focused only on possession, and clearly omitted any direction with regard to the elements required to find purchase.  See CT 60-61 (references to "purchase" in form instruction consistently lined out).  Even though the verdict form identified "possess/purchase" as both covered by § 11351.5, the jury's verdict, in the context of the record as a whole, could only have been based on a finding that petitioner possessed the cocaine base.

There is nothing to suggest the state court violated federal principles or misapplied clearly established federal law in rejecting the above claim.[12]  Thus petitioner has not met his burden of showing he is entitled to habeas relief on this ground.  Woodford, 537 U.S. at 25.

E.  Questioning Of Ray Thames (Ground VI)

At trial, the prosecution called petitioner's parole officer, Ray Thames, to testify that on June 23, 1998, Thames was at petitioner's house and petitioner told Thames that petitioner is the owner of the Cadillac where cocaine was found on July 2, 1998.  RT 65:11-77:20, 114:7-118:19.  The parties agreed that no mention would be made of the fact that Thames was petitioner's parole officer.  RT 14:28-15:27, 117:27-118:4.  During Thames's testimony, the following exchange occurred:

/////

/////

---

[12]  Petitioner cites Sandstrom v. Montana, 442 U.S. 510 (1979), for the proposition that the burden of proof was somehow shifted to petitioner as a result of jury instructions charging petitioner with purchasing cocaine.  Pet. at 11-13.  However, Sandstrom concerns the propriety of jury instructions that inform jurors to presume certain things, unlike the instruction at issue here.

Q:     Officer Thames, you're employed by the State of California?

A:     That is correct, yes.

Q:     As a law enforcement officer?

A:     Yes.

Q:     How long have you been employed in that capacity?

A:     Ten years.

Q:     In that capacity as a law enforcement officer, have you had opportunity to come into contact with the defendant Eric Alston?

A:     Yes, I have.

Q:     For how many years have you had contact with Eric Alston?

A:     Um --

RT 114:10-23.  At that point, a sidebar was held.  After sidebar, the prosecution resumed

questioning without obtaining an answer to the last question.  RT 114:24-116:21.

After Thames was excused, the parties stipulated that Thames was at petitioner's

house on a "routine matter" and, at that time, petitioner was not suspected of being involved in

criminal activity.  RT 117:27-118:4.

Petitioner claims his right to a fair trial under the Due Process Clause of the

Fourteenth Amendment was violated because "[i]t was reasonably apparent to the jury that Ray

Thames was in some sort of relationship which involved prior contact with the criminal justice

system, such as a parole or probation officer."  Pet. at 20:9-11.  A due process violation occurs if

a prosecutor's comments "infected the trial with unfairness."  Darden v. Wainwright, 477 U.S.

168, 181 (1986).

As noted by the California Court of Appeal, Answer, Ex. D at 9, jurors were

specifically instructed: "Do not assume to be true any insinuation suggested by a question asked

a witness.  A question is not evidence and may be considered only as it helps you to understand

the answer." CT 43.  It is generally presumed that jurors follow the court's instructions regarding

whether, and in what respect, something can be considered evidence.  See Aguilar v. Alexander,

125 F.3d 815, 820 (9th Cir. 1997).  There is nothing in the record suggesting that jurors did not

follow the court's instructions, and the unanswered question presented by the prosecution to Mr.

Thames did not present jurors with evidence so prejudicial that no instruction could cure it.  Cf.

United States v. Bland, 908 F.2d 471, 473 (9th Cir. 1990) (prejudicial impact of court's mention

of facts underlying warrant, that defendant on firearms charge was child molester and killer,

could not be cured by instruction); United States v. Gillespie, 852 F.2d 475, 479 (9th Cir. 1988)

(prejudice created by testimony that defendant on trial for child molestation had homosexual

relationship with adopted father could not be cured).  Petitioner's claim of prosecutorial

misconduct with respect to the questioning of Ray Thames must be rejected.

F.  Improper Closing Argument (Ground VII)

      During closing argument, the prosecution stated as follows:

> What happened?  The officers roll upon the situation, saw the
> defendant involved in a conversation.  They had an opportunity
> thereafter to talk to him.  When he saw the officers arrive, he had
> already probably broken down four or five chips of the rock and
> had them in his pocket.  When he saw the officers arrived, [sic] he
> returned to his house, he'd either dumped them in the bushes or in
> the garbage or some where else were [sic] they aren't easily
> retrieved.
>
> As the expert told you was common, he had his stash inside the
> car.  He still had his cash inside his pocket.  When the officers
> contacted him he had already dumped his dope that he had inside
> of his pocket, he had locked the trunk of the Cadillac probably just
> by closing it, and he resumed working on the cars, trying to keep
> an eye on the cops.  As they told, you [sic] he kept looking over
> when they were on the street to see what they were doing because
> he knew he was guilty.
>
> When they contacted him, again he already dumped his dope, but
> he still had his stash and he still had his money.  That's what really
> happened that day.  That's why we're here and that's why I say
> he's a dope dealer.

RT 199:6-26.  Petitioner claims this argument was improper because there was no evidence to

1    support the prosecution's statement that petitioner had cocaine in his pocket, and discarded it as

2    officers approached.  Pet. at 25:9-12.  Petitioner also claims his trial counsel was ineffective for

3    failing to object to the prosecutor's argument.

4          As noted above, a due process violation occurs if a prosecutor's comments

5    "infected the trial with unfairness."  Darden, 477 U.S. at 181.  Ineffective assistance of counsel

6    occurs when counsel's performance falls below an objective standard of reasonableness,

7    Strickland, 466 U.S. at 688, and there is a reasonable probability that, but for counsel's

8    unprofessional errors, the result of the proceeding would have been different.  Id. at 694.

9          The court finds that petitioner's trial was not "infected" with unfairness as a result

10   of the prosecution's closing argument.  The prosecution clearly was hypothesizing during closing

11   argument, not asserting the presence of evidence that did not exist.  Furthermore, jurors were

12   instructed that "[s]tatements made by the attorneys during the trial are not evidence."  CT 43.  As

13   noted above, the court assumes that jurors did as they were instructed to do.[13]  Aguilar, 125 F.3d

14   at 820.

15         With respect to petitioner's ineffective assistance of counsel claim, the California

16   Court of Appeal found, in the only reasoned opinion addressing this claim, that petitioner was

17   not prejudiced by counsel's failure to object to the prosecution's closing because, based on the

18   remaining evidence, the jury reached a fair result.  Answer, Ex. D at 11.  Considering the

19   evidence presented at trial, and the fact that jurors were instructed not to consider the statements

20   of the trial attorneys as evidence, the California Court of Appeal's decision that petitioner was

21   not prejudiced by counsel's failure to object to the prosecution's closing argument is not contrary

22   to, nor based upon an unreasonable application of, clearly established federal law.  Furthermore,

23   the decision is not based on an unreasonable determination of the facts before the Court of

24

25         [13]  Respondent argues that petitioner has procedurally defaulted his claim that the
     prosecution's closing argument resulted in petitioner's right to due process being violated.  For
26   the reasons set forth in note 11 above, the court need not address this argument.

1  Appeal.  Accordingly, petitioner is not entitled to habeas relief.

2      G.  Motion For New Trial (Ground VIII)

3          Petitioner argues that his right to due process was violated when the trial court

4  denied petitioner's motion for a new trial premised on the original declaration of Tasheena

5  Wynne.  Pet. at 26-29.  On direct appeal, the California Court of Appeal found Ms. Wynne's

6  declaration to be not credible.  Answer, Ex. D at 12.

7          As identified in Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002), newly

8  discovered evidence, by itself, can provide the basis for habeas corpus relief if the evidence

9  constitutes affirmative evidence of actual innocence.  To be entitled to relief, a habeas petitioner

10 must go beyond demonstrating doubt about his guilt and must affirmatively prove that he is

11 probably innocent.  Id.

12         There is nothing in the original declaration of Ms. Wynne, or her second

13 declaration, that renders it more likely than not that the cocaine found in the trunk of the Cadillac

14 belonged to Ms. Wynne and not petitioner.  In her declarations, Ms. Wynne accepts

15 responsibility for the cocaine, but there is no physical evidence or testimony of any other non-

16 interested persons tending to show that the cocaine belonged to her and not petitioner.  Ms.

17 Wynne's bare admission, which was rendered after petitioner failed to obtain acquittal, does not,

18 by itself, establish that petitioner is "probably innocent."  Petitioner has not shown that his right

19 to due process has been violated and the California Court of Appeal's finding that the original

20 Wynne declaration did not provide a factual basis to conclude petitioner was entitled to a new

21 trial was not based on an unreasonable factual determination.

22 V.  Conclusion

23         For all the foregoing reasons, the court finds that, with respect to all of the claims

24 presented by petitioner in this action, petitioner has not shown that the adjudication of his claims

25 by California courts resulted in a decision that was contrary to, or involved an unreasonable

26 application of, clearly established federal law as determined by the Supreme Court of the United

20

1    States, or resulted in a decision that was based on an unreasonable determination of the facts in

2    light of the evidence presented in the State court proceedings.  Accordingly, the court will

3    recommend that petitioner's application for writ of habeas corpus be denied.

4            In accordance with the above, IT IS HEREBY ORDERED that petitioner's May

5    19, 2005 motion for leave to file an amended application for writ of habeas corpus is denied; and

6            IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas

7    corpus be denied.

8            These findings and recommendations are submitted to the United States District

9    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

10   days after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13   shall be served and filed within ten days after service of the objections.  The parties are advised

14   that failure to file objections within the specified time may waive the right to appeal the District

15   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16   DATED:  August 15, 2005.

17

18   _____
                      UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25   1
26   alst1817.157(a)